IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Keith Taylor, on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) Case No.: |
| The Chicago Transit Authority, | )<br>) Jury Trial Demanded |
| Defendant. | )<br>)<br>)<br>)<br>) |

**COLLECTIVE ACTION COMPLAINT**

1. Plaintiff Keith Taylor ("Taylor" or "Plaintiff"), individually and on behalf of all others similarly situated (the "FLSA Collective"), by and through his attorneys, brings this action against Defendant The Chicago Transit Authority, a municipal corporation, ("CTA" or "Defendant") for failing to pay operators of CTA buses ("Operators") all of their regular and overtime pay as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Plaintiff alleges as follows based upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief based upon, *inter alia*, the investigation conducted by his attorneys.

**JURISDICTION AND VENUE**

2. This action arises under the FLSA, 29 U.S.C. § 201, *et seq*. The Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein pursuant to 28 U.S.C. § 1331.

3. Venue is proper pursuant to 28 U.S.C. § 1391, because Defendant resides in this District and the acts and omissions giving rise to the claims occurred in this District.

**PARTIES**

4. Plaintiff Keith Taylor is a resident of Chicago, Illinois.

5. CTA has employed Taylor as a full-time Operator since February, 2017. He previously worked as a part-time Operator starting in February, 2015, before he reached full-time status.

6. Defendant CTA is an Illinois municipal corporation with its principal place of business located at 567 W. Lake Street, Chicago, IL 60661-1498. CTA is an employer within the meaning of 29 U.S.C. § 203(d).

7. CTA employs approximately 9,000 bus Operators, with 6,000 full-time Operators and 3,000 part-time Operators at any given time.

**FACTUAL ALLEGATIONS**

8. CTA is one of the nation's largest mass transit operators.

9. Created in 1947, CTA currently provides transit services in Chicago and in 35 surrounding suburbs, and provides 81 percent of the public transit trips in the six-county Chicago metropolitan area. According to CTA, it "has 1,864 buses that operate 129 routes and 1,536 route miles. Buses make about 19,237 trips a day and serve 10,768 bus stops."[1]

10. In 2017, the last full year for which data are publicly available, CTA buses served approximately 249,231,000 riders, or an average of approximately 683,000 riders daily.[2]

**I.   CTA Pays Its Operators for a Pre-Determined Number of Hours for Each "Run"**

11. In order to service that considerable demand, CTA schedules dozens of daily "runs" that dictate the driver's routes on a specific day. The driver's daily schedule of routes, often back

---

[1] https://www.transitchicago.com/facts/ (last visited November 5, 2018).
[2] https://www.transitchicago.com/assets/1/6/Financial_Report_-_Feburary_20181.pdf (last visited November 5, 2018).

2

and forth from the starting and stopping point, is called a "run." For example, one run could consist of driving back and forth from Union Station and Navy Pier, operating the #124 bus route.

12. For each run, CTA develops and issues run "paddles", packets that provide Operators with their personal schedule for each run, as well as the precise number of hours within which CTA expects them to complete their runs ("work time"), and the number of hours for which CTA will compensate them in connection therewith, including allowances ("pay time").

13. Because CTA allows Operators to select, on a quarterly basis, the runs to which they will be assigned, CTA distributes the run paddles to the Operators who will service those runs.

14. An Operator's day often is quite arduous. Many Operators are assigned to "spread runs," runs that require them to take long breaks (often three hours or more) between the two legs of their assigned run, and thus the Operators often are away from home for thirteen (13) or more hours per day despite officially "working" for significantly fewer hours. Moreover, Chicago's roads are plagued by traffic and accidents, particularly during the rush hour commute, which often prohibits Operators from completing their runs within the predetermined "work time."

15. CTA does not compensate Operators whose runs take longer to complete than the work time allotted to that run—due to traffic, accidents, and medical and other emergencies—for time spent operating their buses in excess of their allotted work time unless Operators complete and submit a separate "pay slip" requesting compensation.

16. CTA requires the Operators seeking their overtime pay to complete and submit the pay slip at the end of each workday for which they seek additional compensation.

17. The pay slip can be quite difficult to complete, and often requires Operators to remain at the garage long after they have completed their work day if they wish to secure the compensation due to them.

18. As a result of the time required to complete a pay slip, many Operators, including Plaintiff Taylor, are forced to forego the additional compensation to which they are entitled. Operators who, in many cases, have spent thirteen or more hours away from home simply cannot commit the time and energy required to complete the pay slip for uncompensated time that often amounts to less than the time they would spend completing the pay slip at the end of a long workday.

## II.     CTA Tracks Each Operator's Work Time

19. However, CTA tracks and knows precisely how much time each Operator *actually* spends working daily. Therefore, an employee's failure to prepare and submit a pay slip does not absolve CTA of its obligation to compensate Operators for time spent working in excess of the predetermined work.

20. Operators begin their day by reporting to their assigned CTA garage no later than 15 minutes prior to scheduled departure time for the day's assigned run.

21. Upon arriving to the garage, Operators must enter their assigned Operator ID number into an electronic terminal, which then prints out their day's schedule, as well as a randomly assigned four-digit personal identification number (PIN) valid only for that day.

22. After inspecting their assigned vehicle, Operators board the bus and enter their PIN and Operator ID into the on-board computer. Entering the PIN and Operator ID enables the bus to be operated.

23. Once the Operators reach the geographic end of the first leg of a "spread" run, or the end of their "straight" run, the onboard computer automatically logs them out of the system and disables the bus's operations.

24. As a result of the manner in which the on-the-bus computer governs the vehicle's operability, CTA tracks the bus's movements throughout the day by PIN, Operator ID and GPS, and thus knows precisely where Operators are at all times and how much time they spend operating their buses on any given day, including when the run starts and when it finishes. In addition, cameras are kept on board, allowing CTA to know exactly how long the drivers are on the bus. Therefore, CTA knows precisely how much time each Operator spends operating the vehicle in excess of a run's allotted work time.

25. On information and belief, CTA stores the resulting travel data—and the data as they pertain to each Operator—and uses the data to analyze route timing and develop bus schedules. But despite having access to the precise number of hours—down to the *minute*—that Operators spend operating their buses through Chicago's busy streets, CTA does not pay Operators for time spent driving the vehicles in excess of a run's allotted "work time" if they do not prepare and submit a pay slip at the day's end.

26. CTA thus knows that Plaintiff and the other similarly situated Operators worked overtime hours without receiving proper overtime pay.

27. CTA is, or should have been, aware that its payment practices are unlawful, but willfully chose to disregard the consequences of its actions.

## FLSA COLLECTIVE ACTION ALLEGATIONS

28. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

29. Plaintiff brings Count I below individually and on behalf of all individuals similarly situated as an FLSA Collective, which is defined as:

> All bus Operators who have been employed by Defendant at any time since three years prior to the filing of this Complaint until the date of final judgment in this matter (the proposed "**FLSA Collective**").

30. Plaintiff consents in writing to assert his claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b). Plaintiff's signed consent form is filed with the Court as Exhibit A to this Complaint. As this case proceeds, it is likely that other individuals will file consent forms and join this action as opt-in plaintiffs.

31. Members of the proposed FLSA Collective are known to Defendant and are readily identifiable through Defendant's records.

32. Plaintiff and the FLSA Collective are all victims of Defendant's widespread, repeated, systematic, and uniform illegal policies that have resulted in willful violations of their rights under the FLSA, 29 U.S.C. § 201, *et seq.*, and which have caused significant damage to Plaintiff and the FLSA Collective.

33. These individuals would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join by filing their written consent.

## COUNT I
*Violations of the Fair Labor Standards Act*
*29 U.S.C. § 201, et seq.*
*(On Behalf of Plaintiff and the FLSA Collective)*

34. Plaintiff, individually and on behalf of the FLSA Collective, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

35. Defendant is an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), and is engaged in commerce within the meaning of the FLSA, § 203(b), (s)(1).

36. The FLSA requires covered employers like Defendant to pay non-exempt employees like Plaintiff and the FLSA Collective no less than one and one-half (1.5) times their regular rate of pay for all hours worked in excess of forty (40) in a workweek. 29 U.S.C. § 207.

37. Plaintiff and the FLSA Collective regularly worked more than forty (40) hours per week for Defendant, but Defendant did not properly compensate them for all of their overtime hours as required by the FLSA.

38. Defendant did not and has not made a good-faith effort to comply with the FLSA as it relates to the compensation of Plaintiff and the FLSA Collective.

39. Defendant knew Plaintiff and the FLSA Collective worked overtime without proper compensation, and it willfully failed and refused to pay Plaintiff and the FLSA Collective wages at the required overtime rates. See 29 U.S.C. § 255.

40. Defendant's willful failure and refusal to pay Plaintiff and the FLSA Collective overtime wages for time worked violates the FLSA. 29 U.S.C. § 207.

41. As a direct and proximate result of these unlawful practices, Plaintiff and the FLSA Collective suffered and continue to suffer wage loss and are therefore entitled to recover unpaid overtime wages for up to three years prior to the filing of their claims, liquidated damages or prejudgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

42. WHEREFORE, Plaintiff, individually and on behalf of the proposed FLSA Collective, prays for relief as follows:

    a. A finding that Plaintiff and the FLSA Collective are similarly situated;

b. Certification of this case as a collective action pursuant to 29 U.S.C. § 216(b);

c. Authorization for the prompt issuance of notice to all those similarly situated, apprising them of the pendency of this action and providing them with the opportunity to assert timely FLSA claims by filing individual consent forms;

d. Judgment against Defendant for an amount equal to Plaintiff's and the FLSA Collective's unpaid back wages at the applicable overtime rates;

e. A finding that Defendant's violations of the FLSA are willful;

f. An amount equal to Plaintiff's and the FLSA Collective's damages as liquidated damages;

g. All costs and attorneys' fees incurred prosecuting this claim;

h. An award of any pre- and post-judgment interest;

i. Leave to add additional plaintiffs or claims by motion, the filing of written consent forms, or any other method approved by the Court; and

j. All further relief as the Court deems just and equitable, including but not limited to any injunctive and/or declaratory relief to which Plaintiff may be entitled.

### **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: November 5, 2018                    Respectfully submitted,

                                          BY:    /s/ *Daniel O. Herrera*
                                                       Daniel O. Herrera
                                                       Jennifer W. Sprengel
                                                       Brian P. O'Connell
                                                       **CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
                                                       150 S. Wacker, Suite 3000
                                                       Chicago, Illinois 60606
                                                       Telephone: 312-782 4880
                                                       Fax: 312-782-4485
                                                       dherrera@caffertyclobes.com
                                                       jsprengel@caffertyclobes.com
                                                       boconnell@caffertyclobes.com

                                                       Donald W. Fohrman
                                                       101 W. Grand Ave., Suite 500
                                                       Chicago, IL  60654
                                                        P: 312-661-0450
                                                        F: 312-661-0953
                                                       **DONALD W. FOHRMAN & ASSOCIATES, LTD.**

                                                       *Counsel for Plaintiff and the Putative Class*

9

# EXHIBIT A

## CHICAGO TRANSIT AUTHORITY
## PLAINTIFF CONSENT FORM

1. I consent to make a claim under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. against my current/former employer, The Chicago Transit Authority and any other related entities or affiliates ("Defendant") to recover overtime pay.

2. During the past four years, there were occasions when I worked over 40 hours per week for Defendant as an hourly Operator or other similar position, and did not receive proper compensation for all of my hours worked, including overtime pay.

3. If this case does not proceed collectively, then I also consent to join any subsequent action to assert these claims against Defendant and any other related entities or affiliates.

4. I understand that I may withdraw my consent to proceed with my claims at any time by notifying the attorneys handling the matter.

Date: _____10/22/2018_____

*Keith K Taylor II*
Signature

Keith Taylor
Print Name

**Return this form by fax, email or mail to:**   **Cafferty Clobes Meriwether & Sprengel LLP,**
**Attn: Brian O'Connell**
**Fax: (312) 782-4485**
**Email: boconnell@caffertyclobes.com**
**Address: 150 South Wacker Drive, Suite 3000, Chicago, IL 60606**